UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **MELODIE ALLEN** | \* | **CIVIL ACTION NO.  12-2940** |
| **VERSUS** | \* | **JUDGE S. MAURICE HICKS** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | \* | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Melodie M. Allen protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on August 20, 2008. (Tr. 271, 240-242, 245-247).  She alleged disability as of August 5, 2008, because of irritable bowel syndrome, migraines, bi-polar disorder, manic depression, personality disorder, anxiety, memory lapse, and ankle pain.  (Tr. 262).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 99-101, 124-127).  Thereafter, Allen requested and received a February 24, 2009, hearing before an Administrative Law Judge ("ALJ").  (Tr. 34-54).  However, in a December 16, 2009, written decision, ALJ Larry Butler determined that Allen was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national

economy. (Tr. 102-115). Allen appealed the adverse decision to the Appeals Council. On January 6, 2011, the Appeals Council granted Allen's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 120-123).

On remand, a supplemental hearing was held on May 17, 2011, before ALJ Mary Elizabeth Johnson. (Tr. 55-98). In a June 24, 2011, written decision, the ALJ determined that Allen was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 15-28). Allen again appealed the adverse decision to the Appeals Council. On September 21, 2012, however, the Appeals Council denied Allen's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

On November 20, 2012, Allen filed the instant complaint for review before this court. Succinctly restated, she contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)   An individual whose impairment(s) meets or equals a listed impairment in

>    [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## **The ALJ's Findings**

I. <u>Steps One, Two, and Three</u>

The ALJ determined at step one of the sequential evaluation process that Allen did not engage in substantial gainful activity during the relevant period. (Tr. 20). At step two, she found that Allen suffered severe impairments of bipolar disorder; pain disorder; degenerative disc disease; degenerative changes of the feet with hallux valgus deformity and right great toe joint arthrodesis; and trochanteric bursitis of the right hip. (Tr. 21). She concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 21-23).

II. <u>Residual Functional Capacity</u>

The ALJ next determined that, for the relevant period, Allen retained the residual functional capacity ("RFC") to perform light work,[1] reduced by the following, "the ability to carry out simple one or two step instructions and deal with standardized situations, with occasional or no variables in or from these situations encountered on the job; the ability to have occasional interaction with co-workers and supervisors; and the requirement that she have no interaction with the public." (Tr. 23).

III.  Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Allen was unable to perform any of her past relevant work. (Tr. 26). Accordingly, she proceeded to step five. At this step, the ALJ determined that, as of the date that she applied for disability, Allen was 48 years old, a younger individual, but that she subsequently changed age category to closely approaching advanced age. (Tr. 26). She also had at least a high school education, with the ability to communicate in English. *Id*. Transferability of skills was not material. *Id*. She observed that given Allen's vocational factors, and if she had an RFC for the full range of light work, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 202.21 & 202.14, Table 2, Appendix 2, Subpart P, Regulations No. 4. *Id*.

---

[1] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

However, because Allen's RFC did not permit her to perform the full range of light work, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her additional limitations eroded the occupational base for unskilled light work. (Tr. 27). In response, the VE identified the representative jobs of Cleaner, *Dictionary of Occupational Titles* ("DOT") Code # 323.687-014; and Patch Worker that were consistent with the ALJ's RFC and Allen's vocational profile. *Id*.[2]

## Analysis

I.  Residual Functional Capacity Assessment

In her decision, the ALJ reviewed the available evidence, including the hearing testimony, Allen's activities of daily living, the medical treatment history, and the findings of the treating, consultative, and agency physicians. (Tr. 23-26). She then concluded that,

> [w]hile no single health care provider's assessment completely accounts for Ms. Allen's physical and mental residual functional capacity throughout the entire period involved, the undersigned has considered the assessment of each and finds that a combination of those opinions best suits her abilities and limitations over the months and years. Ms. Allen's condition was not a stagnant, constant situation, but there does seem to be a general trend prevalent during the longitudinal course of events.
> Thus, based on the evidence as a whole, the undersigned finds that the residual functional capacity set forth above . . . is accurate and appropriate in the present case and is not inconsistent with the reports and findings of Ms. Allen's treating and examining physicians.

(Tr. 26).

However, the only physician of record to render an opinion regarding the effects of Allen's physical impairments was the consultative orthopedist, Clinton McAlister, M.D.

---

[2] The VE testified that for the cleaner job, there were 233,000 positions nationally and 3,400 jobs in Louisiana. (Tr. 27, 94). For the patch worker job, there were 236,000 jobs nationally and 3,100 jobs in Louisiana. *Id*. This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

6

Plaintiff contends that the ALJ misstated Dr. McAlister's findings, or alternatively failed to provide good cause for effectively rejecting his opinion insofar as it imposed limitations that exceeded the ALJ's RFC.[3]  The court agrees.

Allen underwent her physical examination with Dr. McAlister on February 17, 2011.  (Tr. 529-535).  At that time, her chief complaint was neck, back, and right hip pain.  *Id*.  She reported back and neck pain since 2008.  *Id*.  She demonstrated very little difficulty changing from supine to a sitting position and from a sitting position to standing.  *Id*.  She also had but slight difficulty with bending and squatting.  *Id*.  Her gait was normal.  *Id*.  She exhibited a full range of motion of the shoulder, elbows, and wrists with 5/5 strength and good stability.  *Id*.  She was capable of fine manipulation, opposition gripping, and grasping bilaterally, with 5/5 grip strength.  *Id*.  She had full range of motion of the hips, knees, and ankles with 5/5 strength and good stability.  *Id*.

McAlister diagnosed degenerative arthritis of the cervical spine C5-6, C6-7; degenerative arthritis of the lumbosacral spine L5-S1; trochanteric bursitis of the right hip; and bipolar disorder.  *Id*.  He concluded that Allen had some definite pathology, especially in her neck, but that her subjective complaints were not documented by the objective findings.  *Id*.  He felt that she could perform at a restricted light duty activity level, and should be able to work an eight hour work day with changes in position between sitting, standing, and walking.  *Id*.

McAlister also completed a medical source statement.  (Tr. 536-541).  He indicated that Allen could frequently lift and carry 10 pounds and occasionally lift 20 pounds.  *Id*.  She could sit for up to one hour at a time for a total of six hours in a workday, and stand/walk for up to 30 minutes at a time, for a total of one hour each.  *Id*.  She could frequently reach, handle, finger, feel, push/pull.  *Id*.  Although she could never climb ladders or scaffolds, crouch, or crawl, she

---

[3] Plaintiff does not challenge the ALJ's assessment of the effects of Plaintiff's mental impairments.  Thus, the court will not address Plaintiff's mental impairments

could occasionally climb stairs and ramps, balance, stoop, kneel, and crouch. *Id*. She could occasionally work at unprotected heights, and frequently be exposed to other environmental conditions. *Id*. He opined that her conditions have been present since 2008. *Id*.

"[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir.1995) (citation and internal quotation marks omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

The ALJ stated that Dr. McAlister opined that Allen was capable of work at the light exertional level for an eight hour day. (Tr. 25). While Dr. McAlister *did* conclude that Allen was able to perform the lifting requirements for light work during an eight hour day, he imposed limits on her ability to continuously stand, walk, and/or sit. Moreover, the total length of time that she could sit, stand, and/or walk was more consistent with sedentary work than work at the light exertional level. In short, Dr. McAlister's opinion was *not* consistent with the ALJ's RFC.[4]

The ALJ did not directly endeavor to discount Dr. McAlister's opinion – likely because she omitted those portions of his assessment that did not coincide with her RFC. The closest that she came to providing a reason for excluding McAlister's findings was her statement that no single healthcare provider had considered the effects of Allen's impairments throughout the period at issue. However, Dr. McAlister specifically stated that his assessment applied from 2008 through the date of his report. (Tr. 541).

---

[4] The court notes that at the end of his narrative report, Dr. McAlister concluded that Allen could "perform at a restricted light duty activity level." (Tr. 533). The court does not discern any necessary conflict between the foregoing and Dr. McAlister's medical source statement. As discussed above, McAlister found that Allen was capable of performing the lifting requirements for light work, but her ability to stand, walk, and sit were more consistent with the exertional demands of sedentary work (plus the need to alter positions).

Even if the ALJ had proffered a valid rationale for discounting McAlister's opinion, the court observes that the remaining record does not contain substantial evidence to support the ALJ's RFC. The only other healthcare professional to assess the effects of Allen's physical impairments was physical therapist, Steve Allison, pursuant to a January 29, 2009, functional capacity evaluation. (Tr. 467-492). Allison's testing confirmed that Allen retained the RFC to safely perform work classified as restricted-light to restricted medium exertional level. *Id*. He found that Allen could frequently sit, stand, and walk, but needed to sit for 20 minutes per hour and stand and walk for 20 minutes per hour. *Id*. She could occasionally reach overhead, and occasionally stoop, squat, kneel, and climb. *Id*. She was able to walk one mile in 21 minutes. *Id*.

Allison's finding that Allen needed to alternate between sitting, standing, and walking every 20 minutes is similar to Dr. McAlister's opinion, and is inconsistent with the ALJ's RFC. The ALJ cryptically stated that she gave Allison's report the weight that it was due. (Tr. 25, n3). However, she apparently rejected his findings because she documented that Allison had not signed the report, and further remarked that his address on the report did not match the address on his curriculum vitae. *Id*.

In lieu of the uncontroverted opinion of Dr. McAlister, the ALJ autonomously derived Allen's physical RFC. The court emphasizes that the lack of a medical source statement describing the types of work that the claimant is still capable of performing does not, in, and of itself, render the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). In *Ripley*, as here,[5] the Commissioner argued that the medical evidence substantially supported the

---

[5] The Commissioner cites to various medical office visit notes from 2008, in which Plaintiff exhibited good range of motion and professed no more than mild pain. *See* Gov.'t Brief, pgs. 5-6. However, the Commissioner does not explain how these office visit notes translate into substantial support for the ALJ's RFC. Moreover, on March 21, 2011, Allen was seen by

9

ALJ's decision. *Ripley, supra*. The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit could not conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

    The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a medical source statement that supports the ALJ's RFC. Moreover, Plaintiff's own testimony does not support the ALJ's residual functional capacity assessment. (Tr. 47).[6] Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

---

orthopedist, Michael Acurio, M.D. for complaints of neck pain, back pain, right foot pain, and right hand pain. (Tr. 569-571). Acurio noted that an x-ray of the cervical spine showed *severe* degenerative arthritis. *Id*. X-ray of the lumbar spine showed mild degenerative disease. *Id*. Acurio diagnosed cervical radiculopathy with degenerative joint disease, lumbar radiculopathy, degenerative joint disease of the right great toe, and De Quervain's stenosising tenosynovitis. *Id*.

    [6] If anything, Plaintiff's testimony appears to be consistent with the findings of Dr. McAlister and Steve Allison.

II.    Step Five and Remand

Because the foundation for the ALJ's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that Plaintiff is not disabled, also is not supported by substantial evidence.

The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Plaintiff's residual functional capacity assessment remains indeterminate.[7]

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

---

[7] There is evidence that Plaintiff is capable of work at the sedentary exertional level. For instance, from August 2010 until April 2011, she worked 20 hours per week, at Bossier Parish Community College. *See* M/Leave to Proceed IFP [doc. # 2]. She also is taking online business and sociology classes and "work[ing] towards an education." (Tr. 92). Indeed, she has to maintain a full course load to preserve her Pell Grant. (Tr. 348-349). However, her need to change positions every 30-60 minutes, together with her mental impairments, remain complicating factors.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 21st day of January 2014.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE